STATE of Minnesota, Respondent,

v.

Earthia WILEY, Appellant.

No. CX–83–1672.

Court of Appeals of Minnesota.

April 17, 1984.

Review Granted Aug. 3, 1984.

C. Paul Jones, State Public Defender, Brian I. Rademacher, Asst. State Public Defender, Minneapolis, for appellant.

Hubert H. Humphrey, III, State Atty. Gen., Thomas L. Johnson, Hennepin County Atty., Minneapolis, for respondent.

Considered and decided by POPOVICH, C.J., and PARKER, FOLEY, WOZNIAK, SEDGWICK and LANSING, JJ., with oral argument waived.

## OPINION

FOLEY, Judge.

This appeal arises from a conviction of possession of marijuana in violation of Minn.Stat. §§ 152.01, 152.02, 152.09, 152.15 (1982). Appellant asserts that the trial court erred in three respects: 1) that the affidavit in support of the search warrant was inadequate to establish a finding of probable cause; 2) that the evidence at trial was insufficient to support his conviction; and 3) that the identity of the informant should have been disclosed in order to assure him a fair trial. We affirm.

For purposes of this appeal, the provisions of Rule 4.6 of the Minnesota Court of Appeals Internal Rules, relative to a divided court, is hereby waived.

## FACTS

On January 24, 1983, a Minneapolis police lieutenant obtained a search warrant for 1501 Upton Avenue North, Minneapolis, from the Hennepin County District Court. The application for the warrant states, in pertinent part:

On 1–24–83 the CRI came into the Organized Crime office and told me that he hd (sic) been at 1501 Upton Ave. N. on 1–22–83 at 2330 hrs. At that time in the basement he had seen 15–20 handguns and rifles in a cardboard box that the occupant of that dwelling stated were stolen. He also saw narcotics consisting of marijuana and cocaine at the same time. The CRI has been at this dwelling

on numerous occasions and has seen stolen property there consisting of guns, stereos, TV's and other misc. items. The occupant is described as a Black Male, late 40's, close to 7 ft. tall, about 300 pounds and he lives there with a white female named Clare. I checked the listing in the cross directory for 1501 Upton Ave. N. and it lists to Clare Bettymae Masanz. I also checked a 1973 Mercedes in front of that address that the CRI indicated is driven by the black male and the white female and I obtained the license number of DMJ 234. This vehicle list (sic) to CLARE BETTYMAE MASANZ, 1501 Upton Ave. N. and is a 4 door blue in color.

\* \* \* \* \* \*

It should be noted that the CRI has been used over several years successfully.

The lieutenant and several other police officers went to 1501 Upton Ave. N. where they executed the search warrant. During the search the officers seized electronic equipment, guns, and suspected marijuana.[1]

The suspected marijuana was found in two separate containers in one of the bedrooms. One of the containers held approximately 5.5 ounces of loose marijuana. There was a smaller box, labeled "Earthia Wiley, 4/27/82," inside this box, along with the marijuana. The second container, holding approximately .5 ounces of loose marijuana, was a syringe box bearing a label with appellant's name.

The bedroom where the marijuana was found also contained numerous papers with appellant's name on them, letters addressed to appellant at 1501 Upton Ave. N., and clothing in the closet of a size that would comfortably fit appellant. There was conflicting evidence regarding whether appellant actually resided on the premises.

At the omnibus hearing the court ruled that the search warrant was valid and the marijuana properly seized. Appellant's

motion to compel disclosure of the informant's identity was denied.

At trial, a public health chemist for the City of Minneapolis testified that in her expert opinion the substance was marijuana. Her opinion was based on two laboratory tests that she had performed: a microscopic examination and a thin layer chromatography.

Appellant had waived his right to a jury trial and the court, sitting as finder of fact, found him guilty as charged.

### ISSUES

1. Was there probable cause to issue the search warrant?

2. Was the evidence sufficient to support appellant's conviction?

3. Was the trial court's denial of appellant's motion to compel disclosure of the informant's identity proper?

### ANALYSIS

*Probable Cause*

The United States Supreme Court recently announced a new standard for determinations of probable cause in *Illinois v. Gates*, —— U.S. ——, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). The "two pronged test" of *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), was rejected in favor of a "totality of the circumstances" test. *Gates*, —— U.S. at ——, 103 S.Ct. at 2332. Under the new standard, the two prongs of "veracity" or "reliability" and "basis of knowledge" are to be "understood simply as closely intertwined issues that may usefully illuminate the common sense practical question whether there is 'probable cause' to believe that contraband or evidence is located in a particular place." *Id.*

The magistrate's duty is to make a practical, common sense decision whether, based on the circumstances set forth in the

---

1. Appellant was also charged with receiving stolen goods but the charge was dismissed when the omnibus court ruled that the evidence was improperly seized.

affidavit, there is a fair probability that contraband will be found on the premises. *Id.* at ——, 103 S.Ct. at 2332.

The duty of the reviewing court is "simply to ensure that the magistrate had a 'substantial basis for conclud[ing]' that probable cause existed." *Id.* (quoting *Jones v. United States*, 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960)). The Court further stated: "[A]fter the fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review. A magistrate's 'determination of probable cause should be paid great deference by reviewing courts.'" *Id.,* —— U.S. at ——, 103 S.Ct. at 2331 (citing *Spinelli*, 393 U.S. at 419, 89 S.Ct. at 591). Finally, the Court stated that "resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *Id.* at ——, 103 S.Ct. at 2331.

The Minnesota Supreme Court adopted the *Gates* standard in *State v. Yahnke*, 336 N.W.2d 299 (Minn.1983).

This court recently addressed the issue of probable cause in *Hanson v. State*, 344 N.W.2d 420 (Minn.App.1984). The facts of *Hanson* differ from this case, but it is useful to note that this court cited with approval the following summation of the *Gates* standard:

> The test of probable cause is met if the affidavit, interpreted in a common sense and realistic manner, sets forth competent evidence sufficient to lead a reasonably prudent person to believe that there is a basis for the search or that the articles sought are located at the place to be searched. There must be sufficient underlying facts so that the magistrate may draw his own conclusions of whether probable cause exists.

*Id.* at 423 (quoting the Minnesota Judge's Criminal Benchbook, 1–4 (1983 Supp.)).

Turning to the case at hand, the affidavit in support of the warrant consists mainly of information provided to the police officer by the informant. The information was based on the informant's personal observation of suspected narcotics at the residence. The police verified the ownership of the vehicle allegedly driven by the occupants of 1501 Upton Ave. N. The affidavit further stated that the informant had been used successfully in the past.

██ This affidavit sets forth evidence sufficient to allow a reasonably prudent person to conclude that there was a basis for the search. The trial court properly admitted the evidence seized pursuant to the warrant.

The dissent finds this affidavit defective because it lacks facts that would tend to establish the reliability of the informant.

It is true that the only statement in the affidavit regarding the informant's reliability is the final sentence: "It should be noted that the CRI has been used over several years successfully." However, even prior to *Gates*, statements of this type were held to satisfy the "reliability" prong of the rigid *Aguilar—Spinelli* test. *See Longsworth v. District Court*, 165 Mont. 539, 530 P.2d 462 (1974) (statement that informant had been used successfully in the past); *State v. Mertens*, 268 N.W.2d 446 (N.D.1978) (informant had cooperated with affiant in the past). Likewise, statements to the effect that an informant is known to be reliable or has provided reliable information in the past have been held to fulfill the reliability requirement. *See* 1 W. LeFave, *Search and Seizure*, § 3.3 at 515 (1978 and Supp.1984).

While this concededly may be a close case, this affidavit *does* satisfy the more relaxed *Gates* standard. *Gates* has been characterized by at least two commentators as providing the issuing magistrate with much more latitude than was had under the *Aguilar—Spinelli* test. LeFave, *supra; The Supreme Court, 1982 Term*, 97 Harv. L.Rev. 4, 184–85 (Nov. 1983). Indeed, the court itself stated:

> Nothing in our opinion in any way lessens the authority of the magistrate to draw such reasonable inferences as he will from the material supplied to him by applicants for a warrant; indeed, he is freer than under the regime of *Aguilar*

and *Spinelli* to draw such inferences, or to refuse to draw them if he is so minded.

—— U.S. at ——, 103 S.Ct. at 2333.

In rejecting the rigidly applied two prong test, the court noted:

[W]e intended neither a rigid compartmentalization of the inquiries into an informant's "veracity," "reliability," and "basis of knowledge," nor that these inquiries be elaborate exegeses of an informant's tip. Rather, we required only that *some* facts bearing on two particular issues be provided to the magistrate.

—— U.S. at ——, 103 S.Ct. at 2328, n. 6.

In its reaffirmation of the "totality of the circumstances" test, the court cited with approval *United States v. Ventresca*, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965), which stated:

[W]here [underlying circumstances] are detailed, where reason for crediting the source of the information is given, and where a magistrate has found probable cause, the courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense manner.

*Id.* at 109, 85 S.Ct. at 746.

Furthermore, the court in *Gates*, referring to the elements of "reliability" and "basis of knowledge" stated: "[A] deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other * * *." —— U.S. at ——, 103 S.Ct. at 2329. The court gave the following example of this proposition:

[E]ven if we entertain some doubt as to an informant's motives, his explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed first-hand, entitles his tip to greater weight than might otherwise be the case.

*Id.* at —— – ——, 103 S.Ct. at 2329–30. In this case we have first hand observation of narcotics on the premises to be searched.

The Eighth Circuit upheld the validity of a warrant in a similar factual situation in *United States v. Fleming*, 566 F.2d 623 (1977) (cited with approval in *United States v. Bentley*, 706 F.2d 1498, *cert. denied*, *Platt v. U.S.*, —— U.S. ——, 104 S.Ct. 107, 78 L.Ed.2d 110 (1983)). In *Fleming*, the affidavit stated that an informant had observed marijuana on the premises to be searched; his reliability was supported by the fact that he had supplied correct information in the past.

The Eighth Circuit held this language sufficient because it revealed that the informant had proven to be a reliable source in the past and that he had first-hand knowledge of the information set forth in the affidavit. The court stated: "The affidavit need only show that criminal activity is probable, not that it exists beyond a reasonable doubt." *Id.* at 625.

The court held that the district court had erred in requiring a showing that the informant's prior tips had resulted in convictions because the practical effect of such a requirement is the necessity of proof of guilt in a separate case as a condition to the warrant. *Id.*

Similarly, in *Gates*, the court noted that the standard for determinations of probable cause is not susceptible to reduction to a "neat set of legal rules," but is a "fluid concept." —— U.S. at ——, 103 S.Ct. at 2328.

Perhaps the central teaching of our decisions bearing on the probable cause standard is that it is a "practical, nontechnical conception * * *. [W]e deal with probabilities * * *. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians act."

*Id.* quoting *Brinegar v. United States*, 338 U.S. 160, 175–76, 69 S.Ct. 1302, 1310–11, 93 L.Ed. 1879 (1949).

■ This affidavit satisfies the *Gates* standard because it provided the issuing judge with sufficient facts to make an independent, common sense determination that probable cause existed. A substantial basis for the determination is present in that the information was based on the infor-

mant's personal observation and that he was shown to have been reliable in the past.

Finally, a reading of the application for the warrant reflects that the reliability of the CRI was "at least partially corroborated independently" on the particular occasion involved by the officer seeking the warrant, *see State v. Wiberg*, 296 N.W.2d 388, 396 (Minn.1980), and is an additional reason for sustaining the magistrate.

*Sufficiency of the Evidence*

Appellant next challenges the sufficiency of the evidence. He asserts that the evidence was insufficient as a matter of law with respect to both identification of the substance as marijuana and the finding of constructive possession.

■■■ The trial was held before the court after appellant waived his right to a jury trial. The trial court's findings are entitled to the same review as a jury verdict. *State v. Crosby*, 277 Minn. 22, 151 N.W.2d 297 (1967). These findings will not be set aside unless clearly erroneous. *State v. Vail*, 274 N.W.2d 127, 133 (Minn. 1979). The role of the reviewing court is to review the record "to determine whether the evidence, direct and circumstantial, viewed most favorable to a finding of guilty, was sufficient to permit the trial court to reach its conclusion. *State v. Mytych*, 292 Minn. 248, 252, 194 N.W.2d 276, 279 (1972).

At trial, an analytical chemist with nearly 30 years of experience testified extensively regarding the tests that she performed on the suspected marijuana. It was her expert opinion that the substance she examined was indeed marijuana of the type prohibited by law.

Appellant attacks the sufficiency of the testing procedures used in identifying the substance as marijuana, citing *Vail. Vail*, however, supports the affirmance of his conviction. The Minnesota Supreme Court stated: "Whether this court would draw the same conclusion from the evidence is not relevant * * *. The judge's findings will not be set aside unless clearly errone-

ous." *Vail*, 274 N.W.2d at 133. The court gave deference to the trial court's finding that the evidence, which consisted of the two tests performed in this case, plus another, was "probably inadequate." *Id.* at 133. The defendant's conviction was reversed, however, because the court disagreed with the trial court's finding that the non-scientific evidence alone was sufficient to support a conviction. *Id.* at 134. Thus, the crux of the *Vail* case was the sufficiency of the non-scientific evidence, not the scientific evidence.

■■■ Here, the trial court determined that the scientific evidence *was* sufficient to support the conviction. This finding is entitled to the same deference as the findings in *Vail* unless it is clearly erroneous. "[D]istrict court findings which are the product of firsthand observation of the demeanor of the parties and witnesses possess a certain integrity not contained in the written record alone." *Tamarac Inn, Inc. v. City of Long Lake*, 310 N.W.2d 474, 477 (Minn.1981). We cannot say that the trial court's findings are clearly erroneous.

Appellant also argues that the evidence was insufficient to support a finding of constructive possession. The required showing for constructive possession was set forth in *State v. Florine*, 303 Minn. 103, 226 N.W.2d 609 (1975):

> "[I]n order to prove constructive possession the state should have to show a) that the police found the substance in a place under defendant's exclusive control to which other people did not normally have access, or b) that, if police found it in a place to which others have access, there is a strong probability (inferable from other evidence) that defendant was at the time consciously exercising dominion and control over it.

*Id.* at 105, 226 N.W.2d at 611.

In *Florine*, the defendant was found to be in constructive possession of a packet of cocaine which was found lying on a notebook that contained a paper bearing his name. The notebook was in an unlocked, abandoned car which also contained several

other papers with the defendant's name on them.

■ Here, other people probably had access to the bedroom where the marijuana was found. However, there was evidence that appellant resided in the dwelling; there were numerous papers bearing appellant's name in the room; and there was clothing in the closet of a size that would fit appellant comfortably (appellant is very tall and weighs almost 300 pounds). Moreover, one of the boxes containing the marijuana also contained a smaller box bearing appellant's name. The second container of marijuana also had appellant's name on it. This evidence is sufficient to support an inference that at one time appellant had physical possession of the marijuana, and when police found it he continued to exercise dominion and control over it, as required by *Florine*.

### *Disclosure of the Informant's Identity*

Finally, appellant argues that the identity of the informant should have been disclosed in order to assure him a fair trial. He argues that the informant's testimony would have been helpful to him in countering the constructive possession charge.

The United States Supreme Court mandated disclosure of an informant's identity in *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). The Court noted a need to balance the public interest in free flow of information against the individual's right to prepare a defense. *Id.* at 62, 77 S.Ct. at 628. The public interest gave way in *Roviaro* because the informant was actually involved in the illegal transaction and was the only witness to particular occurrences.

■ The circumstances of this case are not as compelling as *Roviaro*. The informant is surely not the only witness who could testify as to who occupied the bedroom or other matters relevant to possession of the marijuana. The omnibus court's denial of the motion to compel disclosure was proper.

## DECISION

The en banc panel being evenly divided on the issues involved in this appeal, the judgment of the lower court is affirmed. We waive Rule 4.6 of the Minnesota Court of Appeals Internal Rules and publish the views of the panel in the event the Supreme Court is asked and decides to review this matter as an important question of law.

SEDGWICK, Judge (dissenting).

I respectfully dissent. While I am in complete agreement with the standard for determining probable cause set forth above by the majority, it is not met in this case.

The affidavit in support of this warrant is based entirely on information from an alleged CRI. There is not one fact from which a magistrate could conclude that the informant was reliable. The only attempt to corroborate the informant's reliability is the conclusion by the affiant that: "It should be noted that the CRI has been used over several years successfully."

The majority analogizes the fact situation in *United States v. Fleming*, 566 F.2d 623 (8th Cir.1977) with the facts in the case before us. They are not analogous. The *Fleming* search warrant affidavit, sworn to by a deputy sheriff, contained the following statement: "Reliability of informant is based on fact that he has informed on past occasions to the St. Francis County sheriff's office and the information in the past has always proven correct as to the illegal activity informed on by the informant." Id. at 624.

In contrast to the present case, in *Fleming*, the fact of who the informant gave information to, together with the fact that the information correctly related to illegal activity informed on, supplies minimum facts necessary for a magistrate to form an independent judgment on reliability.

The standard of *Illinois v. Gates*, —— U.S. ——, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), as summarized by *Hanson v. State*, 344 N.W.2d slip op. 420 at 423 (Minn.App. 1984) *"[t]here must be sufficient underly-*

*ing facts so that the magistrate may draw his own conclusions of whether probable cause exists*" (emphasis added) does not exist. There being no basis for the search, the evidence seized should be suppressed.

LANSING, Judge (dissenting).

I join in the dissent of Judge Sedgwick. A primary purpose of the Fourth Amendment is to insure that searches and seizures are screened in advance by a neutral and detached magistrate. Facts are essential for this screening and are a precondition for the issuance of a warrant. Although the quantum and type of evidence must be evaluated under the totality of the circumstances to insure that the probable cause is sufficient, the *existence* of probable cause must first be guaranteed by the presentation of facts. In this case, there are no facts on the crucial issue of reliability of the informant.

We cannot confer unbridled discretion in the individual police officer to conduct searches. The police officer must state a factual basis for the search under oath rather than merely assert in conclusory terms that an informant is "credible" or "reliable" or has been used "successfully." Allowing police to make their own conclusions about reliability can support well-intentioned but unsubstantiated searches. This procedure can equally support willful police misconduct. As Justice Rehnquist wrote for the Court in *Illinois v. Gates*, —— U.S. ——, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983):

> An affidavit must provide the magistrate with a substantial basis for determining the existence of probable cause * * *. An officer's statement that "affiants have received reliable information from a credible person and believe" that heroin is stored in a home, is likewise inadequate. *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). * * [T]his is a mere conclusory statement that gives the magistrate virtually no basis at all for making a judgment regarding probable cause. Sufficient information must be presented to the mag-

istrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others. In order to ensure that such an abdication of the magistrate's duty does not occur, courts must continue to conscientiously review the sufficiency of affidavits on which warrants are issued.

I am also not persuaded that the corroboration in this case is sufficient to establish the informant's reliability. In *State v. Wiberg*, 296 N.W.2d 388 (Minn.1980), the Court held that police corroboration of a key detail of an informant's statement gave credence to the remaining portions of the statement. The Court went on to find that the informant's declaration against penal interest coupled with the police officer's purchase from the informant of one of the stolen weapons was sufficient to support the informant's credibility. In contrast, the corroboration in this case is limited to the officer's independent verification that a woman named Clare lived at the address given by the informant and that a car registered to her was parked in front of the residence. This is corroboration of innocent activity, not corroboration of a *key* detail of the informant's statement. The corroboration here was not remotely suspicious of criminal activity.

For these reasons, I dissent.

PARKER, Judge (dissenting).

I join in the dissents of Judges Sedgwick and Lansing.